UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher W. Madel,                                      Civ. No. 13-2832 (PAM/FLN)

                  Plaintiff,

v.                                                         **MEMORANDUM AND ORDER**

United States Department of
Justice, and Drug Enforcement
Administration,

                  Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is denied.

**BACKGROUND**

In late 2012 and early 2013, Plaintiff Christopher Madel sent requests under the Freedom of Information Act to the U.S. Department of Justice and the Drug Enforcement Administration. These requests sought information regarding the sales and distribution of oxycodone in the state of Georgia by five different entities: Cardinal Health, Inc., CVS Caremark, Walgreen Company, AmerisourceBergen Corp., and McKesson Corp. In particular, Madel sought, for each month or quarter since January 1, 2006, the identity of each person/pharmacy to whom each company had distributed oxycodone and the quantity distributed. Madel's requests also sought specific reports from the DEA's ARCOS[1] database.

---

[1] ARCOS stands for "Automation of Reports and Consolidated Orders System."

After months of delays in responding to his requests, Madel filed this lawsuit seeking to force a response on October 15, 2013. On December 20, 2013, Defendants finally produced some records—reports 2, 3, 4, 5 and 7 from the ARCOS database.[2] Defendants eventually also told Madel that they found nothing in ARCOS report 6, and that CVS does not do business in Georgia. Defendants did not produce either ARCOS report 1, which lists quarterly retail drug distribution by zip code, or specific sales/distribution records for the other four entities. After briefing on the original cross-motions for summary judgment had begun, Defendants denied the remaining portions of his requests under FOIA exemption (b)(4), which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). In particular, Defendants contended that the information in report 1 "contains information traceable to individual manufacturers and distributors, such as market shares in specific geographic areas, estimates of inventories, and sales." Madel v. U.S. Dep't of Justice, 784 F.3d 448, 452 (8th Cir. 2015). The companies objected to the disclosure of the company-specific spreadsheets, arguing that the information "could be used to determine the companies' market shares, inventory levels, and sales trends in particular areas." Id. at 453.

Madel challenged the application of exemption (b)(4), and this Court granted summary judgment to Defendants, finding that Defendants had met their burden to

---

[2] These reports contain information on drug distribution by state and by grams per 100,000 people.

establish that the information Madel sought was subject to exemption (b)(4). (Docket No. 44.)

Madel appealed, and the Eighth Circuit Court of Appeals reversed on a narrow issue: whether the reports contain any information not subject to exemption (b)(4) that is reasonably segregable from exempt information. Madel, 784 F.3d at 453-54. The court of appeals did not overturn this Court's finding that Defendants had established that the spreadsheets in general were exempt from disclosure under (b)(4), see id. at 453 ("DEA shows substantial competitive harm is likely."), but instead determined that, because no finding on segregability had been made, a reversal and remand was required so that this Court could determine segregability. In particular, it noted that it was Defendants' burden to show "with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." Id. at 454 (quoting Juarez v. U.S. Dept' of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008)).

The parties then attempted to resolve their differences without Court involvement. In the fall of 2015, Defendants informed Madel that none of the information he sought was segregable, including any information from ARCOS report 1. However, in February 2016, the DEA publicly released ARCOS report 1 in its entirety. See https://www.deadiversion.usdoj.gov/arcos/retail_drug_summary/index.html. Report 1 contains quarterly drug-distribution totals by zip code for every drug and every state in the United States, for the period 2006 to 2015. Id. Madel's FOIA requests sought information only for 2006 to 2012. The Government did not inform Madel that report 1

was publicly available until days before filing the instant Motion in November 2016.

Because report 1 is now publicly available, the only information still at issue between the parties is oxycodone distribution information specific to the four companies from 2006 to 2012.

**DISCUSSION**

To determine whether summary judgment in favor of a FOIA defendant is appropriate, the Court must construe the facts in the light most favorable to the FOIA requester.  Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985).  The agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Nat'l Cable Television Ass'n, Inc., v. Fed. Commc'ns Comm'n, 479 F.2d 183, 186 (D.C. Cir. 1973).

> An agency may not automatically withhold an entire document when some information is exempt, but rather must provide "'[a]ny reasonably segregable portion.'"  Missouri Coal. for Env't Found. v. U.S. Army Corps of Eng'rs, 542 F.3d 1204, 1212 (8th Cir. 2008), quoting 5 U.S.C. § 552(b). Non-exempt portions must be disclosed unless they are "inextricably intertwined" with exempt portions. Id. (internal quotation marks omitted). The agency has the burden to show that exempt portions are not segregable from non-exempt portions. Id. (noting court may require a more specific affidavit if agency justification is inadequate).

Madel, 784 F.3d 448, 453 (8th Cir. 2015).

Defendants claim an exemption from disclosure for spreadsheets that list oxycodone distribution levels for each of the four companies at issue.  Each spreadsheet's headings include the name, county, city, state, zip code and business activity for suppliers,

similar information for buyers, the drug type, the transaction date, total dosage units, and total grams. (Myrick Decl. I (Docket No. 23) ¶ 35.) The spreadsheets at issue are very large, containing anywhere from nearly 250,000 lines of data for one company to more than 690,000 lines of data for another. (Id.) However, although Defendants rely in part on the large amount of information in each spreadsheet for their segregability arguments, they do not supply the Court with any information about how many lines of data contain information that is relevant to Madel's specific FOIA requests in each spreadsheet. Moreover, on appeal Madel attempted to compromise with Defendants and limited his requests to distributions of over 100,000 or 200,000 units per year. Defendants continue to insist that, even with this limitation, the information is completely exempt from disclosure and the information in the company-specific spreadsheets is non-segregable.

In support of their contentions regarding segregability, Defendants rely almost solely on the four companies' objections to the spreadsheets' disclosure. These objections are stated in broad terms without any specific detail, or even specific justification that the release of any portion of the data will cause the companies competitive harm. The claims of competitive harm are undermined by the fact that the information Madel seeks is at least five years, and up to 11 years, old. Neither the Government nor the companies credibly explain how the release of distribution levels from 2006, for example, would cause any current harm.

And as Madel points out, there is no indication whether Defendants sought additional comments from the companies after the release of ARCOS report 1, which

5

contains much of the information the companies initially objected to producing, albeit not in company-specific form. It is noteworthy that Defendants insisted throughout this litigation that ARCOS report 1 should not be released because the drug amounts reported by zip code could be "reverse engineered" by competitors to determine suppliers' and buyers' identities, sales, inventory levels, and market share in specific areas. (Myrick Decl. I ¶ 45.) Defendants do not explain how this harm, which did not suffice to prevent the release of report 1 in February 2016, is any different from, or less harmful than, the harm claimed with respect to redacted company-specific spreadsheets.

Nor is there any indication that Defendants discussed with the companies whether they considered if any information in the company-specific spreadsheets was segregable. And Defendants have refused to engage in serious discussions with Madel to attempt to find a solution, such as producing redacted reports for certain years or for certain amounts of oxycodone.

The Court of Appeals took issue with Defendants' overly general responses to Madel's FOIA requests, but Defendants have continued to repeat the same general objections they have offered throughout this matter. In addition, the Eighth Circuit specifically noted that the companies' claims of competitive harm were undermined by the public release of "charts showing total dosage units sold per month by Cardinal Health to four named buyers in Florida over four years." Madel, 784 F.3d at 454. Defendants argue that this information was released in a different sort of litigation, not through a FOIA request, but the type of litigation precipitating the information's release is irrelevant. If

releasing the same information for Cardinal Health in Florida did not pose an unreasonable risk of competitive harm, why would releasing that information for Georgia cause such harm? Defendants have ignored the Eighth Circuit's requirement that they explain themselves further in this regard.

In an effort to narrow the issues, at the hearing on the Motion the Court asked Defendants to provide under seal a single page from one of the spreadsheets, so that the Court and Madel could examine the information in light of Defendants' contentions about segregability. Rather than providing a single page from a spreadsheet, Defendants provided a "filtered" excerpt from several spreadsheets regarding distribution levels over 1,000 dosage units for a single company. (See Docket No. 101 (affiant "filtered the data to include the years 2006, 2009, and 2012 and further filtered it by Dosage Units to obtain a representative subset"); see also Docket No. 101-1 ("filtered" spreadsheet excerpt).) As Madel notes, the "filtering" Defendants performed in providing the excerpt rebuts Defendants' claim that it is not possible or practicable to filter the spreadsheets to remove competitively sensitive data.

The Government argues that the only information on the spreadsheets that can be provided without causing competitive harm is the name and locations of the supplier companies, something Madel already knows. The Government does not explain how a spreadsheet containing information only by the buyer's county (which is less specific than the zip-code specific data in ARCOS report 1) that includes dosage units and total grams, along with a transaction year, would cause any competitive harm whatsoever.

The Court has given Defendants the benefit of the doubt throughout this litigation, and Defendants have time and again failed to establish that they deserve that benefit. Whether by refusing to negotiate with Madel in good faith, or by publicly releasing data that they had mere months before insisted was too sensitive to ever make public, Defendants have lost their credibility with this Court.  The Eighth Circuit was clear:  it is Defendants' burden to show that information responsive to Madel's requests is not reasonably segregable from information not subject to disclosure.  Broad pronouncements and general explanations will not suffice to meet this burden, and Defendants have offered nothing more than that here.  Defendants have failed to establish that there is no non-exempt information responsive to Madel's requests that is not segregable from exempt information.  Summary judgment in favor of the Government is inappropriate.

It is the Court's view that company-specific information by the buyer's county, business activity, drug type, transaction date, dosage units, and total grams for the years Madel requests is not exempt from disclosure under (b)(4) and is reasonably segregable from exempt information in these spreadsheets.  In addition, in light of the release of report 1, buyer zip codes might also be reasonably segregable and not exempt from disclosure.  The Court once again urges the parties to negotiate the release of information from the company-specific reports that will satisfy the dictates of FOIA, Madel's requests, and the companies' interests.  Should the parties be unable to resolve their differences, the Court will order the disclosure of redacted spreadsheets consistent with the above discussion.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (Docket No. 89) is **DENIED**.

Dated:  January 11, 2017

                                      *s/Paul A. Magnuson*
                                      Paul A. Magnuson
                                      United States District Court Judge